## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| THERESA B. OGORZALY, | ) | |
| | ) | |
| Plaintiff, | ) | 8:01CV476 |
| | ) | |
| vs. | ) | MEMORANDUM |
| | ) | OPINION AND |
| TIMOTHY DUNNING, SHERIFF OF | ) | ORDER |
| DOUGLAS COUNTY, and | ) | |
| DOUGLAS COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the defendants' motion for summary judgment (Filing No. 55). The defendants filed a brief (Filing No. 56 – Defendants' Brief) and an index of evidence (Filing No. 57) in support of the motion. The plaintiff filed a brief (Filing No. 61 – Plaintiff's Brief) and an index of evidence (Filing No. 62) in opposition to the motion. The plaintiff also filed an objection (Filing No. 60) to Exhibit No. 11 in the defendants' evidence index. The defendants filed an amended index of exhibits in support of the motion for summary judgment (Filing No. 66) and filed a response (Filing No. 67) to the plaintiff's objection to the exhibit.

## BACKGROUND

The plaintiff filed her complaint and request for jury trial on September 14, 2001, alleging violations of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. sections 48-1101 to 48-1125, and the Pregnancy Discrimination Act. **See** Filing No. 1. The parties signed their Consent to Exercise of Jurisdiction by a United States Magistrate Judge, and on November 5, 2001, the consent was approved and the case was transferred to the undersigned magistrate judge by United States District Judge Joseph F. Bataillon, pursuant to 28 U.S.C. § 636(c). **See** Filing No. 6.

The plaintiff presented four causes of action.  The plaintiff's four claims are 1) discrimination based upon gender and pregnancy in violation of Title VII; 2) retaliation for voicing opposition to the defendants' discriminatory acts and for filing claims of discrimination against the defendants, in violation of Title VII; 3) violation of the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. sections 48-1101 to 48-1125; and 4) intentional infliction of emotional distress.  **See** Filing No. 1.  The following recitation of facts and allegations has been drawn from the pleadings and the parties' submissions with respect to the motion for summary judgment.

In her complaint, the plaintiff states she was hired in 1992 as a sheriff's deputy for defendant Douglas County, Nebraska.  **See** Filing No. 1 ¶ 8.  In the summer of 1999, while employed as a deputy sheriff, she became pregnant.  ***Id.*** ¶ 8.  The plaintiff suffered from hyperemesis, a pregnancy-related complication.  **See** Filing No. A62, Ex. 1 (Plaintiff's Deposition) at 51-52.  Due to the complications related to the pregnancy, the plaintiff was on medical leave from July 1999 to September 1999. **See** Filing No. 1 ¶ 8; Plaintiff's Deposition at 50-51.  The plaintiff was unable to care for herself, was bedridden, and received in-home nursing care.  **See** Plaintiff's Deposition at 52-53.

In early- to mid-September, while the plaintiff was on leave, Lieutenant Gary Kratina telephoned the plaintiff and informed her the department was going to submit waivers so the plaintiff would not have to participate in a firearms qualification shoot.  ***Id.*** at 53-54.  The defendants subsequently held the firearms qualification shoot, which is an annual requirement for sheriff's deputies. **See** Filing No. 1 ¶ 8.  The plaintiff did not participate in the qualification shoot, but was told later that the waiver was not going through, so the plaintiff had to get a note from her doctor to receive the waiver.  **See** Plaintiff's Deposition at 58.  The plaintiff was also informed the department did not want her to qualify or participate in the qualification shoot. ***Id.*** at 58.  The plaintiff claims a male deputy on medical leave, Bob Elffner, was given the opportunity to perform the qualification shoot, while the plaintiff was not given the opportunity. ***Id.*** at 68; Filing No. 1 ¶ 8.  The plaintiff claims she was willing to participate in a qualification shoot, but was not given the opportunity to do so prior to January 1, 2000.  **See** Plaintiff's Deposition at 69-72.

2

After January 1, 2000, the plaintiff was not qualified to work as a deputy sheriff because she was not qualified to carry a handgun. **See** Filing No. 57, Ex. 1. Sheriff Tim Dunning placed the plaintiff on leave under the Family and Medical Leave Act (FMLA). *Id.* However, after the plaintiff returned to work following the birth of her child, Sheriff Dunning chose to compensate the plaintiff for the time she was on the FMLA leave "as a fair solution to a circumstance beyond both her and my control." *Id.* Furthermore, Sheriff Dunning stated the sheriff's department did not have a light duty policy prior to September 2000. *Id.* and Ex. 13.

In June 2000, the plaintiff was assigned as a property officer charged with care and custody of evidence and property seized during an investigation. **See** Filing No. 57, Ex. 1. On June 1, 2000, the plaintiff participated in a search during a narcotics investigation and seized $5000.00 during the search. *Id.* Of the amount seized, $2880.00 allegedly later turned up missing. *Id.* After an internal investigation and pre-disciplinary hearing, Sheriff Dunning determined the plaintiff was responsible for losing the money and ordered her suspended for three days without pay. *Id.* The plaintiff appealed the suspension, which was upheld by the Sheriff Merit Commission but, because the plaintiff was suspended prior to the commission's determination, she "was given her days back." *Id.* After the incident involving the $2880.00, Sheriff Dunning was informed the plaintiff had informally complained to Sergeant Russell Torres about harassment she was receiving from other officers. *Id.* The plaintiff submitted the complaints in writing on July 14, 2000, and the Office of Professional Standards conducted an investigation. *Id.* at Exs. 1 and 9. That office filed an investigative report on October 18, 2000, finding the plaintiff had not been harassed based upon gender but that "discord and personality conflicts" existed. *Id.* at Exs. 1, 2, 11. Sheriff Dunning took no corrective action and informed the plaintiff of the findings in the investigative report. **See** Filing No. 57, Ex. 1.

By September 2000, the plaintiff had been in the operations bureau, narcotics division of the sheriff's department for four years. *Id.* Sheriff Dunning, in his affidavit, stated that, from time to time, he fills vacancies in the department's various divisions by transferring deputies from other divisions. *Id.* On September 17, 2000, Sheriff Dunning transferred the plaintiff from the narcotics division to the court services bureau of the sheriff's department. *Id.* In his

affidavit, the sheriff states he transferred the plaintiff due to the time she had already spent in narcotics and due to a vacancy at the courthouse. *Id.* Sheriff Dunning states that experience in several of the department's bureaus provides a more well-rounded experience for a deputy. *Id.*

In support of their motion for summary judgment, the defendants claim the plaintiff is unable to establish her prima facie case on any of her four causes of action. **See** Defendants' Brief. Specifically, as to the plaintiff's first cause of action, discrimination based upon her gender and pregnancy, the defendants claim there was no light duty policy in effect prior to September 2000. **See** Defendants' Brief at 2. The defendants claim the plaintiff was unable to work after January 1, 2000, because she was not certified to carry a handgun, which is essential to the function of being a deputy sheriff. *Id.* The defendants allege the plaintiff has not suffered any damages by her placement on the Family and Medical Leave Act (FMLA) because the plaintiff was ultimately paid for the time she was on FMLA. *Id.* The defendants state the plaintiff was ordered to submit a written complaint about harassment, and the plaintiff later submitted such a complaint. *Id.* The defendants claim the Douglas County Sheriff's Office of Professional Standards conducted an investigation into the plaintiff's claims of harassment and filed an investigative report on October 18, 2000, which stated there was no evidence that the plaintiff was harassed based upon her gender. *Id.* at 3. Accordingly, the defendants took no corrective action, and the sheriff informed the plaintiff of the findings of the investigation. *Id.*

As to the plaintiff's second cause of action, retaliation, the defendants claim that, in June 2000, the plaintiff was assigned to the narcotics division, where she had been assigned since April 1996. *Id.* The defendants state the $2880.00 turned up missing and the plaintiff, as property officer, was responsible for the missing money, which was never recovered. *Id.* The plaintiff was suspended for three days without pay for unsatisfactory performance and was required to turn in her badge and credentials, which was the normal procedure for a suspension. *Id.* at 3-4. The plaintiff appealed her suspension and the suspension was upheld by the Sheriff Merit Commission. *Id.* at 4. Furthermore, with regard to the retaliation claim, the defendants claim the sheriff's department consisted of three bureaus – operations, court

services, and administrative services – at the time the plaintiff was transferred from one bureau to another. *Id.* The defendants state the plaintiff, along with seven other deputies, was transferred from the operations bureau, narcotics division, to the court services bureau after four years in the narcotics division. *Id.* The defendants claim both positions are within the job description of a deputy. *Id.*

In opposition to the motion for summary judgment, the plaintiff claims there are several material facts as to which there are genuine issues for trial. **See** Plaintiff's Brief. First, the plaintiff argues an issue remains as to whether the sheriff's department had an informal light duty policy and whether the plaintiff was denied an opportunity to work on light duty status while male officers were permitted to work on light duty. *Id.* at 1. The plaintiff claims the defendants also discriminated against her by not allowing her to come off medical leave to participate in the "qualification shoot," though a male officer was permitted to come off leave to participate in the shoot. *Id.* at 2. The plaintiff claims she filed a complaint against the defendants with the NEOC in February 2000, and that the defendants permitted other deputies to harass the plaintiff because of the complaint. *Id.* The plaintiff states the defendants retaliated against her by transferring her out of the narcotics division to a less desirable assignment at the courthouse, which involved a decrease in pay. *Id.* Finally, the plaintiff contends the defendants' proffered reasons for transferring her from narcotics to courthouse detail were pretextual. *Id.* The plaintiff argues the reasons were pretextual because the sheriff stated it was his policy to transfer people out of narcotics every four years, but both a captain and a lieutenant in the narcotics division were unaware of any such policy. *Id.*

**LEGAL STANDARD**

**Summary Judgment**

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." **See** Fed. R. Civ. P. 56(c); ***Costello v. Mitchell Pub. Sch. Dist. 79***, 266 F.3d 916, 920 (8th Cir. 2001). When making this determination, the court's function

5

is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, the court must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986); **see also** *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 970 (8th Cir. 1999) (noting the court "may not weigh evidence or make credibility determinations").  The court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Dulany v. Carhahan*, 132 F.3d 1234, 1237 (8th Cir. 1998) (**quoting** *Anderson*, 477 U.S. at 248).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Additionally, Rule 56(e) provides that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**See** Fed. R. Civ. P. 56(e).  A party seeking summary judgment bears the responsibility of informing the court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Tenbarge v. Ames Taping Tool Sys., Inc.*, 128 F.3d 656, 657 (8th Cir. 1997) (**quoting** *Celotex*, 477 U.S. at 325 (noting that the movant must show "there is an absence of evidence to support the nonmoving party's case.")).

In the face of a properly supported motion, "[t]he burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997) (**quoting** Fed. R. Civ. P. 56(e)).   A

nonmoving party may not rest upon the mere allegations or denials of its pleadings but, rather, must show specific facts, supported by affidavits or other proper evidence, showing that there is a genuine issue for trial.  **See** Fed. R. Civ. P. 56(e); ***Liberty Mut. Ins. Co. v. FAG Bearings Corp.***, 153 F.3d 919, 922  (8th Cir. 1998).  Accordingly, the nonmoving party must "set forth in its opposing brief a separate statement of each material fact as to which it is contended there exists a genuine issue to be tried and as to each shall identify the specific document or discovery response or deposition testimony (by page and line) which it is claimed establishes the issue."  **See** NELR 56.1(b).

The Eighth Circuit has held on numerous occasions that "summary judgment should seldom be granted in discrimination cases."  ***Bassett v. City of Minneapolis***, 211 F.3d 1097, 1099 (8th Cir. 2000) (citing numerous cases standing for the same proposition).  One district court in the Eighth Circuit has cautioned: "Summary judgment is appropriate in employment discrimination cases only in 'those rare instances where there is no dispute of fact and where there exists only one conclusion.'"  ***Hasbrouck v. Youth Servs. Int'l, Inc.***, 2002 WL 1974043, *4 (N.D. Iowa Aug. 19, 2002) (**citing** ***Johnson v. Minnesota Historical Soc'y***, 931 F.2d 1239, 1244 (8th Cir. 1991)).  Summary judgment is proper when the plaintiff fails to demonstrate the existence of a factual dispute with regard to each essential element of her claim.  ***Bialas v. Greyhound Lines, Inc.***, 59 F.3d 759, 762 (8th Cir. 1995) (**citing** ***Weber v. Am. Express Co.***, 994 F.2d 513, 515 (8th Cir. 1993)).

As noted previously, the plaintiff presents four causes of action against the defendants. The plaintiff's claims are for 1) discrimination in violation of Title VII, 2) retaliation in violation of Title VII, 3) disability discrimination in violation of the Nebraska Fair Employment Practice Act, and 4) intentional infliction of emotional distress.

## ANALYSIS

### A.    Claims Against Sheriff Dunning

As a preliminary matter, the court notes that the plaintiff has presented claims against "Timothy Dunning, Sheriff of Douglas County, Nebraska" and against Douglas County itself. **See** Filing No. 1.  The defendants note in their brief that individuals cannot be held liable under

Title VII of the Civil Rights Act of 1964 (Title VII).  **See** Defendants' Brief at 7 (**citing *Bales v. Wal-Mart Stores, Inc.***, 143 F.3d 1103, 1111 (8th Cir. 1998); ***Karstens v. Int'l Gameco, Inc.***, 939 F. Supp. 1430 (D. Neb. 1996)).  The plaintiff presented no argument to rebut the defendants' assertion.  The Eighth Circuit has ruled that a supervisor cannot be held liable in his individual capacity under Title VII.  ***Roark v. City of Hazen, Arkansas***, 189 F.3d 758, 761 (8th Cir. 1999).  An individual can be held liable only in his capacity as an employee of the defendant entity and the damages that are assessed against the supervisor are properly imposed upon the "common employer" of the individual supervisor and the plaintiff.  ***Bales***, 143 F.3d at 1111.  This court has also ruled that "individuals, whether co-employees or supervisors, cannot be held liable under Title VII."  ***Karstens***, 939 F. Supp. at 1438.

Based upon the foregoing, the court finds that, to the extent the plaintiff presented Title VII claims against Timothy Dunning individually, such claims must be dismissed. The plaintiff's claims of discrimination and retaliation under Title VII will be dismissed as to Timothy Dunning in his individual capacity.

**B.     First Cause of Action: Discrimination**

Title VII provides in pertinent part: "It shall be an unlawful employment practice for an employer– '(1) . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .'" **See** 42 U.S.C. § 2000e-2(a).  Furthermore, "[i]n 1978, Congress enacted the Pregnancy Discrimination Act (PDA), amending the definitional provision of Title VII to clarify that discrimination 'on the basis of pregnancy, childbirth, or related medical conditions' is sex discrimination under Title VII." ***Lang v. Star Herald***, 107 F.3d 1308, 1311 (8th Cir. 1997) (**citing** 42 U.S.C. § 2000e(k)); **see also *Bergstrom-Ek v. Best Oil Co.***, 153 F.3d 851, 857 (8th Cir. 1998).  Under the PDA, "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work."  **See** 42 U.S.C. § 2000e(k).  "As a result of the PDA, the Title VII terms 'because of sex' or 'on the

8

basis of sex' include discrimination on the basis of pregnancy, childbirth, or related medical conditions." *Lang*, 107 F.3d at 1311 (**quoting** 42 U.S.C. § 2000e(k)).

Under Title VII, a plaintiff can establish the existence of intentional discrimination by presenting either direct or indirect evidence of employment discrimination. *Lang*, 107 F.3d at 1311. In the present case, the plaintiff does not present direct evidence of discrimination, but relies instead on indirect, circumstantial evidence of discrimination. In "indirect" evidence cases under Title VII, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), governs the burden of production and order of proof. **See** *Texas Dep't of Cty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); **see also** *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of employment discrimination. In the context of disparate treatment claims, this burden is satisfied if the facts demonstrate that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified to receive a particular benefit; (3) the plaintiff was denied the benefit; and (4) the same benefit was available to others with qualifications similar to the plaintiff's. *Lang*, 107 F.3d at 1311 (**citing** *Adams v. Nolan*, 962 F.2d 791, 794 (8th Cir. 1992)). If the plaintiff is successful in establishing her prima facie case, the burden of production shifts to the defendants to offer nondiscriminatory reasons for their actions. *Stevens v. St. Louis Univ. Med. Ctr.*, 97 F.3d 268, 270-71 (8th Cir. 1996). Next, if the defendants advance a nondiscriminatory reason, the plaintiff is required to demonstrate that the proffered nondiscriminatory reason for denying the benefit was merely pretext for sex discrimination. *Stevens*, 97 F.3d at 271.

The defendants contest only the plaintiff's ability to establish a prima facie case of discrimination. **See** Defendants' Brief at 7-10. The defendants have not presented arguments with regard to the two remaining elements of the plaintiff's case. Accordingly, the court limits its inquiry to the first prong of the *McDonnell Douglas* framework. However, "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. "[I]t is well-established that the threshold of proof necessary to establish a prima facie case is minimal." *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1022 (8th Cir. 1998).

The defendants contend the plaintiff has failed to meet her prima facie case with regard to seven particular incidents the plaintiff sets forth in her complaint. **See** Defendants' Brief at 7-10. However, the plaintiff has presented only one claim of discrimination, rather than seven. The seven incidents are merely circumstantial evidence of discrimination rather than seven separate claims. The defendants' approach is to analyze the plaintiff's prima facie case with regard to each of the plaintiff's allegations and evidence of discrimination in isolation, as if each incident was a separate claim of discrimination. The court will analyze all the evidence presented with regard to the discrimination claim rather than reviewing the prima facie case as to each particular piece of evidence the plaintiff presents. What the plaintiff has done, in her complaint, is set forth a series of incidents showing the discriminatory animus on the part of the defendants. The court does not find the allegations are separate claims of discrimination; rather, they are evidence of alleged conduct the plaintiff claims shows the discrimination the defendants participated in. The allegations merely recite incidents related to the plaintiff's overall charge of discrimination. As set forth below, the totality of the plaintiff's allegations, and all the evidence presented in support thereof, taken together, establish the plaintiff's prima facie case of discrimination.

To make a prima facie showing of discrimination, the plaintiff must first show she was a member of a protected class. ***Lang***, 107 F.3d at 1311. The parties do not dispute that the plaintiff was, as a pregnant female, a member of a protected class. **See *Bergstrom-Ek***, 153 F.3d at 858 (noting that the pregnant plaintiff was a member of a protected class). As to the second element, the plaintiff must show she was qualified to receive the particular benefits that were denied. ***Lang***, 107 F.3d at 1311. The defendants argue the plaintiff cannot establish she was qualified to receive a light duty work assignment because no such light duty policy existed. **See** Defendants' Brief at 8; Filing No. 57, Exs. 1 and 18. However, the testimony of Lieutenant Kratina established that some form of informal light duty policy existed. **See** Filing No. A62, Ex. 4 at 17, 40. Also, the plaintiff was not permitted to participate in the firearms qualification shoot while she was on medical leave, though another deputy was allowed to come off medical leave to participate in the shoot. **See** Plaintiff's Deposition at 68; Filing No. 1 ¶ 8; Filing No. A62, Ex. 6. The defendants have not provided the court with specific

arguments as to how the plaintiff was not qualified to receive these or any other benefits. The record shows the plaintiff was a deputy with the sheriff's department and, without evidence to the contrary, it appears to the court that she was qualified to receive the same benefits that were afforded other deputies. Thus, the plaintiff has met her burden to establish the second element of the prima facie case of discrimination.

As to the third element of the prima facie case the plaintiff must show she was denied the benefits sought. *Lang*, 107 F.3d at 1311. The plaintiff has shown she was denied the opportunity to participate in the firearms shoot, was not afforded light duty status, and was forced to take FMLA leave after January 1, 2000. The qualification shoot was essential to the performance of the plaintiff's job duties, and she was allegedly denied the opportunity. The plaintiff offered evidence that she was not allowed to come off medical leave to participate in the qualification shoot, while another deputy was permitted to do so. **See** Filing No. A62, Ex. 1 at 68-69, Ex. 6. The plaintiff identified the deputy who was permitted to participate in the qualification shoot. **See** Filing No. A62, Ex. 5 at 6 (Answer to Interrogatory No. 7). Furthermore, the plaintiff has shown she was denied an opportunity to use the defendants' informal light duty policy. **See** Filing No. A62, Ex. 6. As noted above, there is evidence that an informal light duty policy was in effect, but the plaintiff was not allowed to use the policy. Therefore, the court finds the plaintiff has established the third element of her prima facie case by showing she was denied benefits that were afforded other deputies.

Finally, with regard to the fourth element of the prima facie case, the plaintiff must show the same benefit was available to others with qualifications similar to the plaintiff's. *Lang*, 107 F.3d at 1311. The defendants argue the plaintiff is unable to show she was similarly situated to other deputies in all relevant respects. **See** Defendants' Brief at 7-10. However, the defendants do not state in what particulars the plaintiff was not situated similarly to other deputies in the department. The court finds the plaintiff has shown that, as a deputy sheriff, she was situated similarly to the other deputies in the department as to the benefits she sought.

Based upon the foregoing, the court is unwilling to conclude that the plaintiff has failed to establish her prima facie case of discrimination. As noted above, the burden of making out

11

a prima facie case of discrimination "is not onerous." *Burdine*, 450 U.S. at 253. The Eighth Circuit has stated that the threshold of proof required to establish the prima facie case is "minimal." *Young*, 152 F.3d at 1022. Under the *McDonnell Douglas* framework, once the plaintiff establishes a prima facie case, the burden of production shifts to the defendants to offer nondiscriminatory reasons for their actions. *Stevens*, 97 F.3d at 270-71. However, as noted above, the defendants contest only the plaintiff's ability to establish a prima facie case of discrimination. **See** Defendants' Brief at 7-10. The defendants have failed to articulate such a nondiscriminatory reason in their brief in support of summary judgment. *Id.* Therefore, taken as a whole, the evidence before the court indicates a genuine issue of material fact remains as to whether the plaintiff was subjected to discrimination. **See** Fed. R. Civ. P. 56(e). Heeding the Eighth Circuit's warning that "summary judgment should seldom be granted in discrimination cases," *Bassett*, 211 F.3d at 1099, the court finds the instant case is not one of those "rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson*, 931 F.2d at 1244. Accordingly, the defendants' motion for summary judgment will be denied as it relates to the plaintiff's discrimination claim.

## C.    Second Cause of Action: Retaliation

The defendants also contend they are entitled to summary judgment on the plaintiff's Title VII retaliation claim. Under Title VII, an employer is forbidden from retaliating against employees for opposing sex discrimination. **See** 42 U.S.C. § 2000e-3(a); *Bogren v. Minnesota*, 236 F.3d 399, 407 (8th Cir. 2000); *Ogden v. Wax Works*, 214 F.3d 999, 1007 (8th Cir. 2000). That section of Title VII "makes it unlawful for an employer to discriminate against an employee, for among other things, 'because [s]he has opposed any practice made an unlawful employment practice by this subchapter.'" *Gagnon v. Sprint Corp.*, 284 F.3d 839, 849-50 (8th Cir. 2002) (**citing** *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 713 (8th Cir. 2000)); *Hunt v. Nebraska Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002). In the absence of direct evidence of discrimination, the burden-shifting analysis of *McDonnell Douglas* applies to claims of retaliation. *Gagnon*, 284 F.3d at 849-50 (**citing** *Buettner*, 216 F.3d at 713). In order to establish a prima facie case of Title VII retaliation, a plaintiff must

12

show:  1) she participated in activity protected under Title VII; 2) she suffered some form of adverse employment action; and 3) a causal connection exists between the protected activity and the adverse employment action taken.  *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999).  "Once this prima facie showing is made, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions."  *Cross v. Cleaver*, 142 F.3d 1059, 1071-72 (8th Cir. 1998); *McDonnell Douglas*, 411 U.S. at 802. "If the employer carries this burden of production, the burden shifts back to the employee to demonstrate that the proffered reason is mere pretext for discrimination."  *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997) (**citing** *Thomas v. Runyon*, 108 F.3d 957, 959 (8th Cir. 1997)).

As to the plaintiff's prima facie case, she must first demonstrate she participated in a protected activity.  *Kiel*, 169 F.3d at 1136.  The Eighth Circuit has also stated that the first prong can be met if the plaintiff shows "she filed a charge of discrimination." *Manning v. Metro. Life Ins. Co.*, 127 F.3d 686, 692 (8th Cir. 1997).  "The requirement that the plaintiff ha[s] engaged in protected conduct has been phrased in various ways." *Brower v. Runyon*, 178 F.3d 1002, 1005-06 (8th Cir. 1999) (**citing** *Manning*, 127 F.3d at 692 (noting the first prong is met if plaintiff "filed a charge of discrimination"); *Harris v. Secretary, U.S. Dep't of the Army*, 119 F.3d 1313, 1318 (8th Cir. 1997) (noting the standard is met if the plaintiff "complained of discrimination")).  The defendants do not contest that the plaintiff filed a charge with the NEOC.  **See** Defendants' Brief at 14.  Therefore, the court finds, for purposes of the instant motion, that the plaintiff participated in a protected activity sufficient to meet the first element of her prima facie case.

To meet the second prong of the prima facie case, the plaintiff must show she suffered adverse employment action.  *Kiel*, 169 F.3d at 1136.  The adverse employment action contemplated in the second prong of the prima facie case of discrimination must take the form of some material employment disadvantage.  *Cross*, 142 F.3d at 1073.  In other words, in order to be an adverse employment action, the act must occasion "a material change in the terms or conditions of [the plaintiff's] employment."  *Ledergerber*, 122 F.3d at 1144. However, acts short of termination may be considered adverse employment action.  The

Eighth Circuit has held that "a significant change in working conditions or a diminution in [an] employee's title, salary, or benefits" can constitute an adverse employment action. *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 919 (8th Cir. 2000) (citing *Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 853-54 (8th Cir. 2000); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994)).

The plaintiff has presented one claim of retaliation on the part of the defendants, but presented to the NEOC several adverse employment actions she alleges constituted retaliation. The plaintiff claimed retaliation based upon four incidents wherein the defendants allegedly 1) transferred her from the narcotics division to the courthouse, 2) suspended the plaintiff for three days for allegedly unsatisfactory job performance, 3) stripped the plaintiff of the essential functions of her job in the narcotics division, and 4) permitted coworkers and command personnel to harass the plaintiff even after the plaintiff complained of the harassment. **See** Filing No. 57, Ex. 20 (Plaintiff's NEOC Charge of Retaliation).

The defendants claim the plaintiff suffered no adverse employment action. The defendants claim the transfer on September 18, 2000, was not an adverse action because the plaintiff was merely transferred to another position within the plaintiff's job description as a deputy sheriff. **See** Defendants' Brief at 12. The defendants claim the transfer "did not affect her job title as a deputy sheriff, did not affect her benefits as a deputy sheriff, did not affect her seniority and did not otherwise affect her employment or advancement opportunities." *Id.* at 12-13. The defendants argue the transfer actually gave the plaintiff more experience and made her "more well-rounded" as a deputy. *Id.* at 13. However, the defendants have not refuted the plaintiff's evidence that a transfer to courthouse duty would cause a decrease in her pay in comparison to that which she received in the narcotics division. The plaintiff offered the testimony of Lieutenant Kratina, who stated that deputies in the narcotics division had a greater chance of being afforded overtime opportunities and greater pay. **See** Filing No. A62, Ex. 4 at 23-24. "A transfer constitutes an adverse employment action when the transfer results in a significant change in working conditions or a diminution in the transferred employee's title, salary, or benefits." *Fisher*, 225 F.3d at 919 (**citing** *Spears*, 210 F.3d at 853-54). Though both the position in the narcotics division and

14

the position in the courthouse were part of the plaintiff's job description, the plaintiff has demonstrated the transfer from narcotics to the courthouse may have caused a diminution in the plaintiff's pay. Therefore, the transfer constituted adverse employment action. **See** *id.* Furthermore, "a series of retaliatory conduct falling short of discharge or termination can, as a matter of law, constitute an adverse action." ***Bassett***, 211 F.3d at 1105 n.16. The plaintiff offered the testimony of Lieutenant Kratina, who stated he had heard that some members of the sheriff's department were contemplating some inappropriate behavior that might be retaliatory in nature and could be directed at the plaintiff. **See** Filing No. A62, Ex. 4 at 45-48. Based upon the evidence presented, court find the plaintiff's suspension for three days and the defendants' alleged acts of permitting harassment of the plaintiff to occur also may have constituted adverse employment actions. Therefore, the plaintiff has shown she suffered adverse employment action in some form and has met the second prong of establishing a prima facie case of retaliation.

The third prong of the prima facie case requires the plaintiff to establish a causal connection exists between the protected activity and the adverse employment action taken. ***Kiel***, 169 F.3d at 1136. The defendants do not present arguments with respect to the causal connection element. The alleged adverse employment actions were taken after the plaintiff had filed her NEOC charge. Therefore, the court finds the plaintiff has established the possibility that there is a causal connection between the protected activity and the adverse employment action taken.

Because the plaintiff has established a prima facie case of retaliation, the burden shifts to the defendants to set forth a legitimate, nondiscriminatory reason for taking adverse employment action against the plaintiff. ***Cross***, 142 F.3d at 1071-72. The defendants have met this burden. For example, the defendants show that the plaintiff was suspended because money that was seized during an investigation turned up missing. **See** Filing No. 57, Ex. 1. The plaintiff was held responsible for the missing money after an investigation into the incident, and was suspended for three days. *Id.* The defendants also show the plaintiff was transferred due to the sheriff's policy of transferring deputies from one department to another every four years. *Id.* The defendants state that experience in several of the department's

bureaus provides a more well-rounded experience for a deputy. *Id.* The plaintiff has not presented arguments to rebut the defendants' articulated reasons for the adverse employment actions. Therefore, the court finds the defendants have met their burden to articulate legitimate, nondiscriminatory reasons for the adverse employment actions taken.

If the defendants carry the burden of producing such a legitimate reason, the burden shifts back to the plaintiff to show that the proffered reason for the adverse employment action is merely a pretext for discrimination. *Ledergerber*, 122 F.3d at 1144. The defendants presented no specific arguments with regard to the pretext analysis but, rather, merely state that the plaintiff is unable to meet the third prong of the *McDonnell Douglas* analysis to establish that the defendants' asserted reasons are pretextual. **See** Defendants' Brief at 10-11, 13. The plaintiff shows the sheriff's articulated reason for transferring the plaintiff – that it was his policy to transfer people every four years – was not a formal written policy and was unknown to a captain and a lieutenant with the department. **See** Filing No. A62, Ex. 3 at 11-12, 24; Ex. 4 at 13. The plaintiff shows she received the three-day suspension for the seized money that was missing, but that the plaintiff's male supervisor was not held accountable for the missing funds. **See** Filing No. A62, Ex. 1 at 74. The plaintiff also shows the male supervisor was not suspended with regard to the incident. *Id.* The court finds a factual issue remains as to whether the defendants' proffered reasons for the various actions taken against the plaintiff were pretextual. Accordingly, the defendants' motion for summary judgment will be denied as it relates to the plaintiff's retaliation claim.

### D.    Third Cause of Action: Violation of Nebraska Fair Employment Practice Act

The defendants claim the plaintiff's third cause of action, based upon a violation of the Nebraska Fair Employment Practice Act, must be dismissed. The defendants show that this Act prohibits discrimination against "qualified individuals with a disability." **See** Defendants' Brief at 15; Neb. Rev. Stat. § 48-1107.1. The defendants also assert that pregnancy is not considered a disability. **See** Defendants' Brief at 15; 29 C.F.R. § 1630.2(h). The plaintiff concedes that pregnancy is not a disability and that the third cause of action should be dismissed. Accordingly, the court finds that there is no genuine issue of material fact as to the

plaintiff's claim under the Nebraska Fair Employment Practice Act.  The defendants' motion for summary judgment will be granted as it relates to the plaintiff's third cause of action.

**E.**     **Fourth Cause of Action: Intentional Infliction of Emotional Distress**

Under Nebraska law, in order to recover on a claim for intentional infliction of emotional distress, a plaintiff must prove: 1) the defendant engaged in intentional or reckless conduct, 2) the defendant's conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community," and 3) the defendant's conduct "caused emotional distress so severe that no reasonable person should be expected to endure it." ***Brandon v. County of Richardson***, 624 N.W.2d 604, 620-21 (Neb. 2001).  The defendants challenge the plaintiff's ability to establish any of the three elements and, particularly, the third element, whether the conduct caused severe emotional distress.  **See** Defendants' Brief at 15.  The defendants claim the conclusory allegations of emotional distress contained in the plaintiff's complaint are insufficient.  *Id.* at 15-16.  The defendants claim the plaintiff's discovery responses confirm that the plaintiff has not suffered damages as a result of emotional distress. *Id.* at 16.  The defendants also argue that "[i]t is further uncontroverted that the Plaintiff never sought nor obtained help from a mental health professional."  *Id.*  The plaintiff, in response, claims the issue of whether she has suffered emotional distress is an issue to be determined by the trier of fact.  **See** Plaintiff's Brief at 6.  The plaintiff claims the facts set out in her affidavit create genuine issues with regard to the fourth cause of action.  *Id.*

Under Nebraska law, assuming a plaintiff can demonstrate a defendant's conduct was reckless or intentional, the burden remains with the plaintiff to show the conduct was so outrageous that a civilized community would not tolerate it.  ***Brandon***, 624 N.W.2d at 621. Even if a plaintiff is able to show the conduct was so outrageous, she must then show the outrageous conduct caused severe emotional distress.  *Id.*  "Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of the particular case."  *Id.* (**citing *Doe v. Calumet City***, 641 N.E.2d 498 (Ill. 1994)). Furthermore, "the emotional anguish or mental harm must be *medically diagnosable* and

must be of sufficient severity that it is *medically significant.*"  ***Riggs v. County of Banner***, 159 F. Supp.2d 1158, 1172 (D. Neb. 2001) (**quoting *Sell v. Mary Lanning Mem'l Hosp. Ass'n***, 498 N.W.2d 522, 525 (Neb. 1993) (emphasis original)). Finally, "[w]here the character of an alleged injury is not objective, the cause and extent of the injury must be established by expert medical testimony."  ***Riggs***, 159 F. Supp.2d at 1172 (**quoting *Turek v. Saint Elizabeth Cmty. Health Ctr.***, 488 N.W.2d 567, 573 (Neb. 1992)).

In the instant case, the plaintiff's complaint claimed that the various acts of discrimination the defendants took were intentional.  **See** Filing No. 1 ¶ 20.  Assuming, *arguendo*, that this claim is sufficient to meet the first element of the plaintiff's prima facie case, the plaintiff has not presented evidence to meet the second element, to show the defendants' conduct toward her was extreme and outrageous.  **See *Riggs***, 159 F. Supp.2d at 1172.  Furthermore, "[e]ven if it could be so viewed, there is no probative evidence that [the plaintiff] suffered severe emotional distress as a result."  ***Id.***  The plaintiff has failed to show specific facts, supported by affidavits or other proper evidence, demonstrating that there is a genuine issue for trial with regard to the emotional distress claim.  **See** Fed. R. Civ. P. 56(e).

Based upon the evidence and claims the plaintiff has asserted, a reasonable jury could not find she suffered the type of emotional distress required to state a claim for emotional distress.  The plaintiff has not advanced any evidence or particular arguments that might allow a reasonable jury to find that the intentional behavior of the defendants was "outrageous" or "extreme" or that it was intended to inflict emotional distress on the plaintiff.  The plaintiff has not offered evidence or testified that her emotional distress was severe.  She has presented no facts tending to support the conclusory assertion that she suffered severe emotional distress so atrocious that no reasonable person should be expected to endure it.  The plaintiff's interrogatory answers demonstrate that she did not visit a doctor or mental health professional.  **See** Filing No. 57, Ex. 17 at 2 (Answer to Interrogatory No. 4).  The plaintiff went back to work as a deputy for the sheriff's department and, as of the date of her deposition in this matter, the plaintiff remained as an employee with the sheriff's department. **See** Plaintiff's Deposition at 5.  Under the circumstances, and construing the facts in the light most favorable to the plaintiff, the court finds no genuine issue of material fact exist regarding the plaintiff's

18

emotional distress.  Accordingly, the defendants' motion for summary judgment will be granted as it relates to the plaintiff's claim of intentional infliction of emotional distress.

**F.**     **Objections to Exhibit 11**

The plaintiff has filed an "objection" (Filing No. 60) to Exhibit 11 contained in the defendants' index of evidence (Filing No. 57) in support of the motion for summary judgment.  The plaintiff claims the exhibit is impermissible hearsay, and seeks to have the exhibit stricken.  **See** Filing No. 60.  The plaintiff also states that the exhibit has not been "sworn to" as required under Fed. R. Civ. P. 56(e).  *Id.*  The court notes the affidavit of Russell Torres (Exhibit 2), attesting to the report contained in Exhibit 11, failed to list the exhibit number for Exhibit 11.  **See** Filing No. 57, Ex. 2.  Lieutenant Torres' affidavit, however, swore to the report contained in Exhibit 11, failing only to reference the specific exhibit number of Exhibit 11.  In response to the plaintiff's objection, the defendants filed an amended index of evidence containing the amended affidavit of Russell Torres and specifically swearing to Lieutenant Torres' personal knowledge of the matters contained in Exhibit 11.  **See** Filing No. 66.  The court finds Exhibit 11 was sworn to in Lieutenant Torres' original affidavit (Exhibit 2), which inadvertently failed to reference the specific exhibit number for Exhibit 11.  Therefore, the plaintiff's objection to Exhibit 11 will be overruled and the request to strike Exhibit 11 will be denied.

## CONCLUSION

Based upon the evidence presented, the court is unable to conclude that the plaintiff's claims under Title VII, for discrimination and retaliation, fail to set forth genuine issues of material fact.  The court finds the plaintiff has established that genuine issues for trial exist.  Therefore, the defendants' motion for summary judgment is denied as it relates to the plaintiff's Title VII claims of discrimination and retaliation.  However, to the extent these Title VII claims are presented against Timothy Dunning in his individual capacity, the claims are dismissed.  Furthermore, the defendants' motion for summary judgment is granted on the plaintiff's third cause of action, regarding discrimination based upon a disability under the

Nebraska Fair Employment Practice Act.  Finally, the defendants' motion for summary judgment is granted as it relates to the plaintiff's fourth cause of action for intentional infliction of emotional distress.  Upon consideration,

**IT IS ORDERED:**

1.      The defendants' motion for summary judgment (Filing No. 55) is granted in part and denied in part, as more fully set forth below.

        a.      Summary judgment is denied as to the plaintiff's first cause of action, discrimination in violation of Title VII.

        b.      Summary judgment is denied as to the plaintiff's second cause of action, retaliation in violation of Title VII.

        c.      Summary judgment is granted as to the plaintiff's claims of discrimination and retaliation in violation of Title VII insofar as these claims are asserted against Timothy Dunning in his individual capacity.

        d.      Summary judgment is granted as to the plaintiff's third cause of action for violation of the Nebraska Fair Employment Practice Act.

        e.      Summary judgment is granted as to the plaintiff's fourth cause of action for intentional infliction of emotional distress.

2.      The plaintiff's objection (Filing No. 60) to Exhibit No. 11 in the defendants' evidence index is overruled and the request to strike Exhibit No. 11 is denied.

3.      This Memorandum Opinion and Order is not a final and appealable order until after entry of judgment adjudicating all the claims and the rights of the parties, pursuant to Fed. R. Civ. P. 54(b).

        Dated this 10th day of January, 2003.

                                BY THE COURT:

                                 s/Thomas D. Thalken
                                THOMAS D. THALKEN
                                United States Magistrate Judge